**GARO B. GHAZARIAN (State Bar No. 152790)**
**LAW OFFICE OF GARO B. GHAZARIAN, APC**
**15915 Ventura Boulevard, Suite 203**
**Encino, California 91436**
**Telephone (818) 905-6484**
**Facsimile (818) 905-6481**
**Email: gbglaw@sbcglobal.net**

Attorney for Defendant
VARDGES ABELYAN

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | Case No. 2:23-cr-00285-ODW-1 |
| Plaintiff, | **DEFENDANT VARDGES ABELYAN'S OBJECTION TO THE PSR; SENTENCING MEMORANDUM, AND EXHIBITS "A" THROUGH "I" IN SUPPORT THEREOF** |
| v. | |
| VARDGES ABELYAN, | |
| Defendant. | Date:  April 29, 2024 |
| | Court: Hon. Otis D. Wright, II |

TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE CENTRAL DISTRICT OF CALIFORNIA; TO ASSISTANT U.S. ATTORNEY, ALEXANDER B SCHWAB; AND, TO THE UNITED STATES PROBATION OFFICE:

Defendant Vardges Abelyan, through counsel, hereby by and through his attorney of record, Garo B. Ghazarian, hereby submits his objection to the PSR and sentencing memorandum for the Court's consideration.

This memorandum and the accompanying exhibits are submitted in support of defendant Abelyan's request for a sentence that is sufficient, but not greater than necessary to fulfill the purposes of sentencing; and, a sentence which serves the interests of justice and accommodates the sentencing purposes set forth in Title 18, United States Code § 3553(a).

Date: April 15, 2024

Respectfully submitted,

LAW OFFICE OF GARO B. GHAZARIAN, APC

By      /s/Garo B. Ghazarian
        GARO B. GHAZARIAN
        Attorney for Defendant
        VARDGES ABELYAN

# I.

# OVERVIEW

On December 18, 2023, Defendant Vardges Abelyan pled guilty to one count of Wire Fraud, in violation of 18 U.S.C. §1343.  He now comes before this Court for sentencing.  Mr. Abelyan submitted false statements to obtain an Economic Injury Disaster Loan (EIDL) from the Small Business Administration; and he made false statements to United Wholesale Mortgage to purchase a property located at 12720 Burbank Boulevard, Unit 118.  He was arrested on May 18, 2023 and released on June 7, 2023 on a $500,000 appearance bond.  He has complied fully with all of the conditions of his release while under the supervision of U.S. Pre-Trial Services.

In the Plea Agreement the parties agreed to an advisory guideline base offense level of 7 [U.S.S.G. §2B.1.1(a)(1)]; and an 8-level increase for loss amount of less than $95,000 [U.S.S.G. §2B1.1(b)(1)(E)].[1]  In the Presentence Investigation Report (hereinafter "PSR"), the Probation Office calculates a loss amount of greater than $150,000, thus adding a 10-level increase for loss amount.  The PSR also adds a 2-level increase for sophisticated means pursuant to U.S.S.G. §2B1.1(b)(10)(C); a two-level decrease for Zero-Point Offender [U.S.S.G. §4C1.1]; and a 3-level decrease for Acceptance of Responsibility [U.S.S.G. §3E1.1]; yielding a total offense level of 14 which at Criminal History Category I produces an advisory guideline range of 15 to 21 months of imprisonment.  In its letter dated March 24, 2024, the Probation Office recommends a low-end sentence of 15 months and orders restitution in the amount of $169,158.[2]  The Government's sentencing position, dated April 1, 2024, concurs with the PSR's offense level computation and recommends a mid-range sentence of 18 months.[3]

---

[1] Plea Agreement, p. 13, lines 1-4.

[2] In the Plea Agreement the parties stipulated that Mr. Abelyan forfeits $131,313.35 in bank funds and $27,885.00 seized from his person. These sums of monies, totaling $159,198.35 are equal to the total amounts of monies derived from Mr. Abelyan's criminal conduct.

[3] Government's Sentencing Position, p. 3, lines 11-15

## II.

## DEFENDANT OBJECTS TO THE RECOMMENDED 2-LEVEL

## SOPHISTICATED MEANS INCREASE

U.S.S.G. §2B1.1, App. Note 9(B) states in part:

> 'Sophisticated means' means especially complex or especially
> intricate offense conduct pertaining to the execution or
> concealment of an offense… Conduct such as hiding assets or
> transactions, or both, through the use of fictitious entities,
> corporate shells, or offshore financial accounts also ordinarily
> indicates sophisticated means.

Defendant Abelyan, through counsel, objects to the 2-level increase for sophisticated means recommended by the Government and the Probation Office, for two primary reasons. First, undersigned counsel submitted the following clarification and objection to the Probation Officer on April 1, 2024:

> This email is concerning your "disclosed recommendation letter
> "dated March 12 and addressed to Judge Wright, regarding my
> client Vardges Abelyan. *AUSA Alexander Schwab is ccd.*
> Please note that in the section titled "nature and circumstances of
> the offense," in relevant part, you write:
>
> *On June 18, 2020, Abelyan opened the Cargo Fleet Rental to
> create a false impression that Cargo Fleet Rentals conducted
> real business.*
>
> That assertion is in error.
>
> Both the Government and the Defense agree that the factual basis
> of the plea agreement containing the above language

4

inadvertently omitted the word "**bank account**" which should have preceded the phrase "Cargo Fleet Rentals."

In other words, the factual basis of the plea agreement should have stated Defendant opened the Cargo Fleet Rental's **bank account** on June 18, 2020…

Thus, your "recommendation letter" (as well as paragraph 85 of the PSR) should be amended to reflect:

*1/ Defendant registered Cargo Fleet Rentals Inc. with the Secretary of State of the State of California on July 25, 2019.*

*2/ Defendant opened the Cargo Fleet Rentals bank account on June 18, 2020.*

Taking this clarification into consideration it becomes clear that Mr. Abelyan did not create a "corporate shell" to carry out the fraudulent activity to which he has pleaded guilty. Rather, the entity in question, Cargo Fleet Rentals, was opened well before he entered into what is best described as a run-of-the mill and simple type fraud, rather than the kind of intricate or complicated fraud that would rise to the level of sophisticated means. It goes without saying that some type of untrue or fraudulent statement must be made to commit the offense to which Mr. Abelyan has pleaded guilty; it is an element of the crime.

Second, it is submitted that this defendant's conduct does not exhibit sophisticated means for the simple reason that Mr. Abelyan has no command whatsoever of the English language and was therefore unprepared and unable to carry out these acts without assistance. This defendant is an exceedingly naïve young man who trusted more knowledgeable actors to assist him in perpetrating the fraud to which he has pleaded guilty. Mr. Abelyan accepts complete responsibility for his offense, but respectfully requests that this Court rule that the

sophisticated means specific offense characteristic should not be applied.  There is nothing remotely sophisticated about this defendant.

## III.

## ACCEPTANCE OF RESPONSIBILITY

Vardges Abelyan has pleaded guilty, taken responsibility, and been explicit in expressing his shame since these proceedings began.  In his attached letter to the Court, Mr. Abelyan states:

> "I write this letter with great remorse for the crime I have committed.  I cannot find the words to correctly convey my emotion, but I want you to understand how much I regret all that I have done.  When I was young, I had a list of goals for what I wanted for my family and myself.  This list was intended to bring respect and admiration to my family name.  Instead, my actions have brought disgrace upon me and my family.  I come from a good family and what I did was completely against our grain. Nobody else in the family has ever been in any kind of trouble.

> Your Honor, I humbly request your compassion and understanding as I strive to reconcile with my past and rebuild my future.  I am committed to making amends and contributing positively to society.  I have never had any trouble with the law before, either in the USA or in Armenia.   I have always endeavored to respect all laws and regulations, and I am grateful for the opportunities provided by this country and I am ashamed of the conduct that brings me before you for sentencing.

> I assure Your Honor that nothing like this will ever happen again, and I ask for your mercy and understanding as I strive to rebuild my life." (Letter from Mr. Vardges Abelyan, attached as Exhibit "A").

In his letter, Vardges's brother Narek Abelyan observes:

> "Based on our regular lengthy phone conversations, I can confidently affirm that he acknowledges the errors he committed and is willing to embrace his guilt and mistakes…

6

Your Honor, Vardges' conduct that have caused a great deal of damage do not reflect his character but rather a period in his life where he had a lapse of judgment. I can confidently say this because of my brother's regret towards his actions. If I could please request your utmost leniency based on my brother's remorse." (Letter from Mr. Narek Abelyan, attached as Exhibit "B").

# IV.

## DEFENDANT'S SOCIAL HISTORY SUPPORTS
## A MITIGATED SENTENCE

The following information regarding the defendant's history and characteristics is provided in the spirit of 18 U.S.C. §3661 which sets forth, "No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence."

## A.     General Background

Vardges Abelyan, age 31, was born on December 10, 1992 in Yerevan, the capital city of Armenia.  He lived in Yerevan until he immigrated to the United States in 2018 after obtaining a green card through a lottery process in Armenia.

Vardges is the second of three children born to his mother Vardanush Ivanyan. 56, and his deceased father Ashot Abelyan.  His mother and his two siblings still live in Yerevan. Vardges's mother works as a hotel manager. His brother Narek Abelyan, 32, is a property manager in Yerevan and his sister Marlena Abelyan, 28, owns a skin care center there. Marlena lives with her mother and Narek lives next door.

Vardges's father Ashot was in the import/export business in Yerevan.  Ashot Abelyan died in 1996 when he was caught in the crossfire of a shooting that occurred in Yerevan. Vardges was three years old when his father was killed.  He did not learn the nature or details of his father's death until he was fifteen, when his paternal grandmother, who lived with his family after her husband died, told him what happened.

Vardges was thus doubly traumatized, not only by the loss of his father at such a young age, but also by learning years afterward of how his father's death transpired. He has never participated in any form of therapy or counseling. Since his arrest in the pending matter, Vardges has had ample time and cause to reflect on his life and has come to realize the traumatic effect that his father's death and its circumstances have had on him.

In her letter to the Court, Vardges's sister Marlena writes:

> "Your Honor, I'm not proud of the choice my little brother has made, that has brought him to his very dark place in his and our family's life, but I come before you to shed light on the remarkable character of my brother, Vardges, and the profound impact he has had on our family.
>
> Following the devastating loss of our father during our formative years, my brother stepped into the role of a father figure for me, providing unwavering support, guidance, and love. His presence was a source of stability and comfort during turbulent times, shaping the person I am today. Despite facing his own challenges, my brother worked tirelessly in Armenia to provide for our family. His dedication and perseverance culminated in a heartwarming surprise – the gift of enough funds to fulfill my childhood dream of attending university and becoming a doctor.
>
> His selfless act not only enabled me to pursue higher education but also instilled in me a profound sense of gratitude and determination. Furthermore, my brother's compassion extends beyond financial support. In recognition of the void left by our father's absence, he makes it a point to bring flowers to our mother on each anniversary. This simple yet poignant gesture serves as a reminder of his unwavering love and devotion, providing our mother with solace and companionship during moments of remembrance." (Letter from Ms. Marlena Abelyan, attached as Exhibit "C").

Vardges's uncle Ruben Harutyunyan reflects in his letter:

> "Your Honor, I humbly request your forgiveness. He has broken the law and made a huge mistake but knowing him, I know he would never make that mistake again. I know he is just as saddened as we are. Looking into his eyes I could tell he is sincerely apologetic for his actions. I know he realizes his mistakes. Vardges grew up without his father by his side to guide

him and I am pretty sure this impacted his life in more ways than I can think of.

Your Honor, I respectfully ask for your leniency towards Vardges, considering his young age and his sincere admission of guilt. He has assured me that he will strive to lead a righteous life moving forward and avoid repeating the errors of his past." (Letter from Mr. Ruben Harutyunyan, attached as Exhibit "D").

Vardges's aunt, Tigranuhi Abelyan, writes:

"Your Honor, I am asking you to please forgive Vardges for the mistakes he made. This situation has torn the family apart and has impacted all of our lives. I apologize on his behalf…" (Letter from Ms. Tigranuhi Abelyan, attached as Exhibit "E").

## B.   **Upbringing in Armenia**

Vardges grew up in difficult circumstances in Armenia, the second most densely populated of the former Soviet republics. Armenia is currently one of the world's poorest countries, with a significant portion of the population living below the poverty line.  Beginning in the late 1980s, a few years before Vardges was born, there was a steady increase in political conflict in the Soviet Union that eventually resulted in the break-up of that country and a subsequent breakdown in local authority in the former republics, including Armenia.  The political situation was complicated by violent ethnic conflict between Armenia and neighboring Azerbaijan.  A state of emergency was declared in November 1988, by which time thousands of ethnic Armenians were fleeing Azerbaijan and returning to Armenia.  Hostilities along the Armenian-Azerbaijani border have continued to the present.

Vardges recalls that throughout his youth, Armenia was essentially "under siege" and it was a daily struggle to obtain basic necessities.  Food was scarce and electricity and fuel were rationed.   Vardges and his siblings did whatever they could to help their family make ends meet and he recalls gathering wood with his brother for cooking and heating, and standing in long lines for food rations.  When he was old enough Vardges began taking on odd jobs, including clean-up tasks on construction sites and janitorial work at a local factory.

Vardges finished high school in Yerevan and then attended Yerevan State Agricultural College, where he earned a degree in 2010. For the next two years he served in the Armenian military and then went to work as a supermarket manager. Before leaving Armenia he was working as a property manager in partnership with his brother Narek.

In her letter to the Court, Vardges's mother Vardanush offers:

> "In my youth, I was widowed with three young children, facing a cruel destiny that left me to confront my challenges alone. If I were to become disappointed and broken, the consequences for my three young children would be dire. Consequently, after the demise of my husband, I made it my mission to instill only commendable human traits in my sons and daughter. I have always tried my best to raise my children to be educated, have good values, morals, respect and to be humble.
>
> Vardges, despite facing hardships since his early years and growing up without a father, gained a profound understanding of life's challenges. He supported me and our family by diligently working from a young age. Vardges is an incredibly intelligent and hardworking boy. His modest and discreet nature led to him being highly respected by his peers in school, sports, and the military." (Letter from Mrs. Vartanush Ivanyan, attached as Exhibit "F").

## C.    Life in the United States

Vardges has lived in California since October 2018, when he won a green card lottery in Armenia. He has never been married and has no children. Vardges initially lived with his uncle Ruben Harutyunyan for two years in Glendale, before moving out on his own to an apartment in the Valley Village neighborhood of Los Angeles.

For most of the brief time he has lived in California, Vardges has been employed as a handyman and since July of 2023 he has worked at NewForm Construction in Los Angeles as an estimator and delivery driver. He has also been involved in the Armenian community by way of his longstanding interest in sports activities. Vardges began practicing martial arts at age 12 and participated in competitions throughout Armenia. Karen Harutyunyan reports in his letter to the Court:

"As a representative of the International Sports Union, I have had the privilege of working closely with Mr. Abelyan…

Vardges Abelyan has been an invaluable asset to our organization, volunteering his time and expertise at our sports school to mentor and coach children in various athletic disciplines. His commitment to fostering the growth and development of young athletes is truly commendable. Mr. Abelyan's passion for sports and his genuine desire to make a positive impact on the lives of others are evident in his tireless efforts and unwavering dedication. I can confidently affirm that Vardges Abelyan has built strong and positive relationships with all parents and sportsmen involved in our programs. His professionalism and genuine concern for the well-being of others have earned him the respect and admiration of his peers and the community at large." (Letter from Mr. Karen Harutyunyan, attached as Exhibit "G").

Vardges has also maintained contact with his family in Armenia and has visited them frequently since he moved to California. Sarkis Cholakyan is a Chiropractor who has been practicing in California for over 20 years. Mr. Cholakyan observes in his letter:

"One particular instance that stands out in my memory is when Vardges and I faced a great adversity together. It was during the height of the Armenian war of 2020, a time of intense turmoil and hardship for our community. Despite the chaos surrounding us, Vardges remained steadfast and courageous, offering support and assistance to those in need without hesitation. His compassion, kindness, and willingness to help others, even in the face of adversity, truly exemplify his character." (Letter from Mr. Sarkis Cholakyan, attached as Exhibit "H").

Kestutis Jurjonas who has known Vardges for several years through volunteer work at their respective churches, St. Casimir Church and St. Leon Armenian Cathedral, states that Vardges never ceases to amaze him with his empathy and selflessness. He writes:

"[I]t is important to highlight that individuals like Vardges Abelyan, especially of his age group, are rare in their level of dedication and commitment to volunteer work for the church. In a time where young volunteers are not as prevalent, Vardges stands out as a shining example of selflessness and service. His tireless efforts and significant contributions to the church are invaluable, and his willingness to take on responsibilities and

11

tasks demonstrate his exceptional work ethic and dedication to the community." (Letter from Mr. Kestutis Jurjonas, attached as Exhibit "I").

# V.

## THE 18 U.S.C. §3553(A)(2) FACTORS SUPPORT THE REQUESTED SENTENCE

Under the principles established in <u>United States v. Booker</u>, 543 U.S. 220 (2005), the Federal Sentencing Guidelines are now, of course, purely advisory. The Guidelines are one among a number of factors that courts are directed to assess in imposing a sentence that is "sufficient, but not greater than necessary" to achieve the purposes set forth in 18 U.S.C. §3553(a)(2). Neither §3553(a) nor <u>Booker</u> suggests that any of these factors is individually paramount. All of them, however, are controlled by §3553(a)'s mandate to impose a sentence "sufficient, but not greater than necessary" to comply with the purposes of sentencing.

Numerous appellate decisions from various circuit courts have clarified the role and approach of the sentencing court in the post-<u>Booker</u> era. The Ninth Circuit has held that "Booker empowered district courts, not appellate courts...[and] breathe[d] life into the authority of district court judges to engage in individualized sentencing." <u>United States v. Whitehead</u>, 532 F.3d 991, 993 (9th Cir. 2008). The Ninth Circuit has also determined that in weighing the sentencing decisions of a district court, the proper standard is abuse of discretion, and it will not "second guess" the court's conclusions so long as they are reasonable. <u>United States v. Menyweather</u>, 447 F.3d 625, 633 (9th Cir. 2006).

Further, the Seventh Circuit has stated that post-<u>*Rita*</u> "[t]he district courts must calculate the advisory sentencing guideline range accurately, so that they can derive whatever insight the guidelines have to offer, but ultimately they must sentence based on 18 U.S.C. § 3553(a) without any thumb on the scale favoring a guideline sentence*."* <u>United States. v. Sachsenmaier</u>, 491 F.3d 680, 685 (7th Cir. 2007) (referencing <u>Rita v. United States,</u> 551 U.S. 338 (2007)).

As part of the sentencing calculus, in addition to weighing the "history and characteristics of the defendant" and the "nature and circumstances of the offense," both of which have been discussed in some detail in the course of this memorandum, 18 U.S.C. §3553(a)(2) directs U.S. District Court judges to consider just punishment; deterrence; societal protection; and the need to provide defendants with necessary educational and vocational training.

## A.    Retribution

It is understood that Defendant Vardges Abelyan has committed a serious offense for which he must receive punishment. Incarceration of any length will leave a lasting impression on him, as seen from his reaction to the roughly one month of confinement that he has already experienced.

Vardges's mother and his two siblings all live in Armenia. Vardges is very close to his family and he is ashamed to be putting them through this ordeal.  Moreover, he will not, in all likelihood, receive any visits from his family while serving any sentence that may be imposed.  The realization that this separation flows directly from his own wrongful actions and decisions will make it all the more difficult for Vardges to bear.  Moreover, he would probably not qualify for early release credits from the BOP under programs such as the First Step Act, due to his status as a deportable inmate.

## B.    Deterrence

There are two types of deterrence, specific (or individual), and general (or societal).  With respect to individual deterrence, it is highly unlikely that Vardges will commit this or any type of crime again.  Vardges is an uncomplicated young man who suffered a great deal of hardship growing up in his native Armenia.  He is committed to gaining a fuller understanding of how his upbringing has affected his life, to the point of contributing to the absence of good judgement that brings him before this Court for sentencing.  His greatest desire is to put this matter behind him and apply himself to honorable pursuits and to make amends to his family.

In terms of general deterrence, any reasonable person who might otherwise be tempted to participate in a similar offense would surely reconsider upon learning that they could be facing not only a Federal conviction and sentence, but also deportation from the United States.

## C.  Incapacitation

There are unquestionably cases where incapacitation is necessary to protect society from further crimes on the part of predatory defendants.  This is not one of them.  Vardges Abelyan does not pose a danger to others.  He has no history of violence and no history of possession of any type of weapon. He is contrite, he is still young, and he recognizes the wrong-headedness of his acts.  He has apologized to the larger society and to his family, and he has pledged to do better going forward.

## D.  The Need to Provide Defendants with Educational and Vocational Training ("Correctional Treatment")

Vardges has served in the military, and has a history of marketable employment in the construction and handyman field.  A prolonged incarceratory sentence is not required to teach him a skill or trade.

## VI.

## CONCLUSION

Defendant Vardges Abelyan has taken full responsibility for his crime. He has articulated remorse at each turn of these proceedings, particularly in discussions with his family.  Vardges is disappointed in himself and profoundly ashamed that he has let his loved ones down.   He understands how foolish and short-sighted his actions were, and he realizes there is no one to blame but himself. Whatever sentence this Court decides to impose, Vardges will forever regret this stain he has brought on his name and his family.

For all of the reasons cited in this memorandum and in the appended letters, Vardges Abelyan, through counsel, respectfully requests that the Court take account of the

1  circumstances in mitigation that are present, and leaven justice with mercy in imposing the

2  sentence.

3  Date: April 15, 2024                    Respectfully submitted,

4                                          LAW OFFICE OF GARO B. GHAZARIAN, APC

5

6                                          By      /s/Garo B. Ghazarian
7                                                  GARO B. GHAZARIAN
                                                   Attorney for Defendant
8                                                  VARDGES ABELYAN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

## TABLE OF EXHIBITS

2

**EXHIBIT A** — Letter of Vardges Abelyan [Defendant]

3

**EXHIBIT B** — Letter of Narek Abelyan [Defendant's Brother]

4

5    **EXHIBIT C** — Letter of Marlena Abelyan [Defendant's Sister]

6    **EXHIBIT D** — Letter of Ruben Harutyunyan [Defendant's uncle]

7    **EXHIBIT E** — Letter of Tigranuhi Abelyan [Defendant's Aunt]

8

**EXHIBIT F** — Letter of Vartanush Ivanyan [Defendant's Mother]

9

10    **EXHIBIT G** — Letter of Karen Harutyunyan [Defendant's Friend]

11    **EXHIBIT H** — Letter of Sarkis Cholakyan [Defendant's Friend]

12    **EXHIBIT I** — Letter of Kestutis Jurjonas [Defendant's Friend]

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28